## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

|  |  |  |
|---|---|---|
| CORNELIUS TOWNSEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14-cv-403 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Cornelius Townsend, Jr. ("Mr. Townsend") filed a complaint pursuant to 42 U.S.C. §
405(g) seeking judicial review of the final decision of the Defendant, the Acting Commissioner
of the Social Security Administration ("Commissioner" or "Defendant"), denying Mr.
Townsend's claim for Supplemental Security Income ("SSI") between August 1, 2005 and June
2007, pursuant to Title XVI of the Social Security Act.  Both parties have filed Motions for
Summary Judgment, ECF Nos. 14, 16, which are now ready for recommended disposition.  This
action was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C.
§§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local
Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United
States Magistrate Judges.  For the following reasons, the undersigned **RECOMMENDS** that Mr.
Townsend's Motion for Summary Judgment, ECF No. 14, be **DENIED**; the Defendant's Motion
for Summary Judgment, ECF No. 16, be **GRANTED**; and the final decision of the

Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Mr. Townsend filed an application for SSI on July 28, 2005,[1] alleging a disability onset date of April 30, 2002. R. 46.[2] The claim was initially denied on October 20, 2005, R. 40, and denied again upon reconsideration on May 18, 2006, R. 41. Thereafter, Mr. Townsend filed a request for a hearing before an administrative law judge ("ALJ"), which was held on April 5, 2007. R. 82, 599. In an opinion dated June 5, 2007, the ALJ found Mr. Townsend disabled as of December 4, 2004,[3] pursuant to 20 C.F.R. 416.920(a) and Section 1614(a)(3)(A) of the Social Security Act. R. 46-54.

By letter dated October 2, 2007, the Commissioner made an initial determination that Mr. Townsend was ineligible for SSI payments until July 2007. R. 58. The Commissioner's decision found that Mr. Townsend had excess resources in the amount of $63,708.37 from a piece of property in Northampton County, Virginia ("Property"). R. 58-62. Accordingly, Mr. Townsend's resources exceeded the $2,000 resource limit over the relevant time period. R. 36. Thereafter, upon reconsideration, Mr. Townsend was again denied SSI payments. R. 76. Mr. Townsend subsequently requested a hearing before an ALJ to review the Commissioner's initial decision. R. 82.

After initial and supplemental hearings, the ALJ found, in an opinion dated January 9, 2010, that Mr. Townsend was ineligible for SSI payments prior to July 2007. R. 58-62. The

---

[1] Claimants are ineligible for SSI until, among other requirements, the claimant files an application for SSI. *See* 20 C.F.R. § 416.202(g). In addition, claimants will not be paid SSI "for any period that precedes the first month following the date on which an application is filed or, if later, the first month following the date all conditions for eligibility are met." *Id.* § 416.501. Moreover, all resource determinations are made "as of the first moment of a calendar month." Program Operations Manual System ("POMS") SI 01110.600.

[2] "R." refers to the certified administrative record that was filed under seal on October 24, 2014 pursuant to Local Civil Rules 5(B) and 7(C)(1). ECF No. 11.

[3] The finding of disability is not in dispute on appeal.

2

ALJ determined that because "[t]here was no legal instrument . . . demonstrating that there was a legal obligation by the claimant to repay any of the money received from proceeds" from the sale of the Property, Mr. Townsend "had the right to liquidate the Property" and could have "kept the money for himself in his capacity as the sole shareholder." R. 61-62. Mr. Townsend filed a request for an appeal, R. 89-90, and the Appeals Council ultimately granted his request, R. 71.

In an order dated January 27, 2012, the Appeals Council vacated the ALJ's January 9, 2010 decision and remanded to the ALJ. R. 71-73. The Appeals Council ordered the ALJ to enter additional documents into the record[4] and to make findings as to whether Mr. Townsend owned the Property or merely acted as shareholder; the ALJ was also directed to consider corporate records, tax returns, Mr. Townsend's personal income tax records, and books and records that corporations and trustees keep in the ordinary course of business. R. 72-73. In addition, the Appeals Council directed the ALJ to consider the statute of frauds and piercing the corporate veil when making its determination. R. 73. Finally, the Appeals Council ordered the ALJ to make findings regarding whether Mr. Townsend had excess resources until July 2007 by considering, among other issues, whether any resources were excludable as essential to the means of self-support under 42 U.S.C. § 1382b. R. 73.

On remand, the ALJ again found that Mr. Townsend was ineligible for SSI prior to July 2007, in an opinion dated June 14, 2013. R. 35-39. Mr. Townsend sought review of the

---

[4] Included were: (1) correspondence from Mr. Townsend's prior attorney, dated October 21, 2011, *see* R. 72, 93-99 (alleging that Mr. Townsend "never himself had a 'stake' or ownership interest" in the Property even though he may have had right to liquidate as trustee; second, even if the Property was a resource, the Property was non-liquid resource under 20 C.F.R. § 416.1201(c) and thus should be evaluated for its equity value after considering encumbrances in amount of $61,866.50; third, if neither, then a resulting trust was created and ultimately Mr. Townsend was eligible during the period in question); (2) notice of the Appeals Council Action, dated November 2, 2011, *see* R. 63-68, 72; (3) correspondence from the Appeals Council, dated September 26, 2011, enclosing hearing records and instructing Mr. Townsend that he could submit more material evidence to develop the facts or law in the case, *see* R. 72, 91-92; and (4) Mr. Townsend's request for review of the ALJ's decision and supporting documentation, dated February 16, 2010, *see* R. 72, 89-90.

decision, which was denied by the Appeals Council. R. 12-15. Therefore, the June 14, 2013 decision is the final decision of the Commissioner for purposes of this review. Because both parties have filed Motions for Summary Judgment, the dispute is now ripe for adjudication.

## II. FACTUAL BACKGROUND

On December 19, 2001, C & T Restaurant, Incorporated ("C & T Restaurant"), a Virginia corporation, purchased the Property for $45,000. R. 211. Mr. Townsend testified at the January 10, 2013 hearing that his brothers had formed the corporation, R. 566, and that he did not own the corporation; rather, according to a March 11, 2013 letter, his family merely placed it in his name, R. 184. Mr. Townsend also testified that the original sale was handled by Mr. Townsend's brothers, Winston and Larry Townsend. R. 568. According to testimony from Ms. Angela Sheppard at the November 24, 2009 hearing, Mr. Townsend's friends and families ("alleged contributors") "all agreed to chip in some money to purchase the building." R. 579. The building, she added, was titled in the name of the corporation. *Id.* Additionally, she testified that Mr. Townsend did not contribute any money to the purchase of the Property. R. 579. Conversely, according to Mr. Townsend's attorney who later handled the resale, "Mr. Townsend *bought* the property with the intention of operating a restaurant and bar." R. 199 (emphasis added). Notably, copies of the paperwork and other incorporation documents were not retained by Mr. Townsend's brothers or the attorney who handled the real estate sale, R. 187, 550, 568-99, and the Virginia State Corporation Commission destroyed the records upon dissolution of the corporation. R. 187.

Mr. Townsend's family and friends who allegedly contributed money to the purchase of the Property[5] submitted letters to the Commissioner dated May 15 to 20, 2009, at least eight

---

[5] The alleged contributors were Vivian Burton, Shameka Daggins, Stephen Kilgmore, Keron Matthews, Angela

4

years following the purchase of the Property, stating that they provided monies over a period of five years towards the purchase and upkeep of the Property.[6]  R. 219-227 (the "contributor letters").  According to these letters and a letter written by Mr. Townsend to the ALJ, R. 228, each alleged contributor considered Mr. Townsend to have "acted solely as trustee of the property in question"[7] and as a "caretaker."  R. 219-27, 567-68.  Moreover, in a letter dated May 18, 2009, from the attorney who handled the sale of the Property, the attorney stated he "believe[d] that [Mr. Townsend's] family lent [Mr. Townsend] money to get started," although he was not involved in the lending.  R. 199.

Mr. Townsend, being "the most responsible family member" nearest to the Property, R. 228, cleaned, swept, and checked in on the building.  R. 568.  Mr. Townsend, however, was never paid money for this service, other than "a few dollars" to check in on the Property.  R. 567-68.  The building ultimately burnt down in March of 2003, R. 37, 579, and, as the insurance had lapsed, was never rebuilt.  R. 579-80.  The Property sat idle and the corporation was automatically dissolved on April 30, 2003, under Virginia Code § 13.1-752(A) for failure to either submit its annual report or pay its annual registration fee in a timely manner.  R. 37, 214. Mr. Townsend held the Property from April 30, 2003 until its sale in June 2007.  R. 188. According to Ms. Sheppard's testimony, the "investors [and not Mr. Townsend] decided to sell" the Property after the building was destroyed.  R. 580.

---

Sheppard, Lisa Sheppard, Kevin Townsend, Larry Townsend, and Winston Townsend.  R. 219-28.

[6] These contributions totaled $61,450, in particular $5,000 from Vivian S. Townsend-Burton (younger sibling to Mr. Townsend), $6,500 from Larry Townsend (younger sibling to Mr. Townsend), $35,000 from Winston Townsend (eldest sibling of the Townsend family), $500.00 from Kevin Townsend (youngest sibling of the Townsend family), $10,000 from Angela Sheppard, $250 from Lisa Sheppard, $1,500 from Shameka Daggins, $2,500 from Keron Matthews, and $200 from Steven Kilgore.  R. 219-228.  As the Commissioner noted in her Memorandum in Support of Motion for Summary Judgment, ECF No. 17 attach. 1 at 11 n.4, Mr. Townsend did not explain the discrepancy between the $45,000 purchase price and the $61,450 allegedly provided by these individuals.

[7] One letter, written by Ms. Angela Sheppard merely indicated that Mr. Townsend "acted as trustee," not that Mr. Townsend "acted *solely* as trustee of the property in question."  R. 223 (emphasis added).  Ms. Angela Sheppard "contributed $10,000 over a period of five years towards the purchase and upkeep of the property."  *Id.*

5

On June 25, 2007, Mr. Townsend, on behalf of C & T Restaurant executed a deed selling the Property from C & T Restaurant to a buyer for $65,000. R. 214-16. The notarized deed referred to Mr. Townsend as the grantor who was the "sole director of C & T Restaurant" and "trustee in liquidation of C & T Restaurant" pursuant to Virginia Code § 13.1-752 for the "purpose of winding up the affairs" of the corporation. R. 215-16. In addition to the notarized deed, Mr. Townsend executed a Consent and Declaration on June 25, 2007, as part of the deed of the sale of the Property. R. 216-17. The Consent and Declaration, in relevant part, professed that:

> I, CORNELIUS L. TOWNSEND, JR. do hereby certify that at the time of the termination and dissolution of C & T RESTAURANT, INCORPORATED on April 30, 2003, the only stockholder of record and the only shareholder having any interest in C & T RESTAURANT, INCORPORATED was CORNELIUS L. TOWNSEND, JR.
> This statement is executed by the undersigned as the sole stockholder and as the sole investor of C & T RESTAURANT, INCORPORATED. . . . I, the undersigned, hereby consent to the execution of this deed by the one Director, CORNELIUS L. TOWNSEND, JR., who was the sole director when the corporation was terminated on April 30, 2003, acting in my behalf as Director and Trustee for the corporation known as C & T RESTAURANT, INCORPORATED.[8]

R. 217-18.

According to the contributor letters, after the sale of the Property, each contributor received their proportionate share of the proceeds from their original contribution without interest. R. 219-27. The proceeds of the sale of the Property, amounting to $63,708.37, were held in escrow by Herman B. Walker, Esquire. R. 191, 207. Mr. Walker distributed the proceeds at closing to eleven individuals, including Vivian Townsend-Burton ($5,000), Shameka Daggins ($1,500), Stephen Kilgmore ($200), Keron Matthews ($2,500), Angela Sheppard

---

[8] A later letter by Mr. Townsend's attorney contested the fact that Mr. Townsend was the sole shareholder and identified Ms. Angela Sheppard as a "major stockholder. R. 185.

($10,000), Lisa Sheppard ($250), Mr. Townsend ($1,841.87), Kevin Townsend ($500), Larry Townsend ($6,500), Winston Townsend ($35,000), and Mr. Walker ($416.50).  R. 207-10, 212-13.  The alleged contributors allegedly decided to give Mr. Townsend the remaining $1,841.87.  R. 228, 580.  Mr. Townsend substantiated this, indicating that the alleged contributors "*gave* [him] some money." R. 566 (emphasis added).  Over the applicable time period, Mr. Townsend reported no other earnings for the purposes of the Federal Insurance Contributions Act.  R. 239.

### III. THE ALJ'S FINDINGS IN HER JUNE 14, 2013 OPINION

In her June 14, 2013 opinion on remand, the ALJ found that "[t]he claimant held the Property in question from April 2003 until its sale on June 20, 2007" and was ineligible for SSI payments during that time.  R. 35-39.  The ALJ determined that Mr. Townsend: (1) as trustee of the corporation, "had the right to liquidate the property and keep the money for himself in his capacity as the sole shareholder, sole stockholder, sole director, and sole investor" because prior to July 2007 he "was the legal owner of the property;" (2) "had resources in excess of $2,000 prior to July 2007, including the C & T Restaurant Property;" and (3) was therefore "ineligible for SSI benefits prior to July 2007, at which time he spent down the proceeds from the sale of the property." R. 38.

The ALJ emphasized that although Mr. Townsend was afforded "additional time in which to submit documentation regarding . . . C & T Restaurant, Incorporated, no additional documentation was submitted." R. 36.  Mr. Townsend's attorney stated in a letter dated May 3, 2013, that "neither [Mr. Townsend's] brothers, nor the lawyer who handled the real estate settlement retained copies of any of the incorporating documents." *Id.* (citation removed).  Further, Mr. Townsend's attorney "testified at the remand hearing that no tax returns were filed on behalf of the corporation." *Id.*  Additionally, the Virginia State Corporation Commission

7

purged its corporate records after the corporation was dissolved under Virginia law. R. 550-51.

The ALJ concluded that Mr. Townsend failed to meet his burden of demonstrating that he had any legal obligation to repay his friends or family members. R. 37-38. The ALJ concluded this, even though Mr. Townsend was a statutory "trustee in liquidation" under Virginia Code § 13.1-752.[9] R. 37-38. The ALJ underscored the fact that Mr. Townsend failed to provide a written agreement regarding reimbursement. R. 38. Indeed, Mr. Townsend signed a Consent and Declaration which listed Mr. Townsend as the *only* shareholder having any interest in the dissolved corporation. R. 38. Moreover, in the Consent and Declaration, Mr. Townsend declared he was "the sole stockholder and . . . the sole investor of the corporation." *Id.* Mr. Townsend therefore had the right, authority, or power to liquidate the Property. *Id.* Under Virginia Code § 13.1-752, Mr. Townsend was required to "satisfy any liabilities and obligations of the corporation" and then distribute the remaining assets of the corporation among its shareholders," which included *only* himself. *Id.* Upon finding that Mr. Townsend had no liabilities or obligations, as he was not legally obliged to repay the alleged debts, the ALJ thus found Mr. Townsend ineligible. *Id.*

## IV. STANDARD OF REVIEW

Under the Social Security Act, judicial review is limited to determining whether the findings of the ALJ were supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman*, 829 F.2d at 517. Substantial evidence is evidence that "a reasoning mind

---

[9] Both parties agree that Mr. Townsend was a statutory trustee. *Compare* ECF Doc. 15, attach. 1 at 6-7, *with* ECF Doc. 17, attach. 1 at 4, 9-10.

would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

In reviewing the ALJ's opinion for support of substantial evidence, this Court will not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). "Where conflicting evidence allows reasonable minds to differ . . . the responsibility for that decision falls on the ALJ." *Id; see also Craig*, 76 F.3d at 589 (noting that the question was not whether the claimant was disabled, but whether the ALJ's finding that claimant was not disabled was supported by substantial evidence).

## V. DISCUSSION

I.   **The ALJ's Finding That Mr. Townsend Was Ineligible for SSI Payments before July 2007 is Supported by Substantial Evidence.**

Mr. Townsend made three arguments as to why substantial evidence does not support the finding of SSI ineligibility prior to July 2007. First, Mr. Townsend argued that the Property is not a resource because he could not use the proceeds of the sale for his "support and maintenance" as required under 20 C.F.R. § 416.1201(a). ECF No. 15, attach. 1 at 5-6. Second, Mr. Townsend argued that even if the Property was a resource, the Property was held in a resulting trust, which therefore reduced his resource level below the $2,000 threshold of SSI eligibility. *Id.* at 8-10. Third, Mr. Townsend argued that he had preexisting obligations as a statutory trustee under Virginia Code § 13.1-752(C) to repay either shareholders or alleged preexisting creditors, which therefore reduced his resources below the $2,000 threshold of SSI eligibility. *Id.* at 7-11.

9

In response, the Defendant argued that the Property was correctly considered a resource because Mr. Townsend had the ability to liquidate the resource as a statutory trustee under 20 C.F.R. § 416.1201(a)(1) and distribute the funds to himself as the sole shareholder. ECF No. 17, attach. 1 at 2. Second, the Defendant argued that the evidence does not support a finding of a resulting trust because Mr. Townsend's proffered evidence did not overcome the burden of clear and convincing evidence. *Id.* at 10-11. Third, the Defendant argued that Mr. Townsend has not met his burden of proving the existence of other shareholders or preexisting creditors. *Id.* at 9, 11.

In light of the evidence, the applicable law, and the standard of review, the undersigned finds that substantial evidence supports the ALJ's: (1) decision to count the Property as a resource under 20 C.F.R. § 416.1201(a); (2) failure to find a resulting trust; and (3) failure to find either other shareholders or preexisting obligations under Virginia Code § 13.1-752(C).

### A. The ALJ's Finding that the Property was a Resource is Supported by Substantial Evidence.

Mr. Townsend argued that the Property was improperly categorized as a "resource" because he lacked the ability to "use the cash for his or her support and maintenance," as required under 20 C.F.R. § 416.1201(a).[10] ECF No. 15, attach. 1 at 5-6. 8-10. Defendant, in contrast, argued that the Property was properly categorized as a resource because Mr. Townsend, as the sole shareholder, had the "right, authority or power to liquidate the property" under 20 C.F.R. § 416.1201(a)(1) and distribute the proceeds to himself. ECF No. 17, attach. 1 at 2.

---

[10] Mr. Townsend's ownership of the Property is not at issue on appeal. Mr. Townsend's Brief in Support of Motion for Summary Judgment, in relevant part, conceded, "[a] trustee, for example, holds legal title to property, consistent with the second definition of 'own' in Black's Law Dictionary [(9th ed. 2009)], 'to have legal title to,' but he is not entitled to expend the proceeds from its sale for his own support and maintenance because he does not have beneficial ownership." ECF No. 15, attach. 1 at 5. Although Mr. Townsend then argued in favor of a resulting trust, R. 552-53, he recognized that he was a statutory trustee under Virginia Code § 13.1-752, R. 550. Mr. Townsend's legal ownership as a trustee is therefore established by his role as statutory trustee under Virginia Code § 13.1-752(C).

Here, the undersigned finds that substantial evidence supports the ALJ's determination that the

Property is a resource because, as the sole shareholder and investor, Mr. Townsend could use the

proceeds of the Property for his "support and maintenance" under 20 C.F.R. § 416.1201(a).[11]

To qualify for SSI payments under 42 U.S.C. § 1382(a), a claimant (1) must be found

"aged, blind, or disabled;" and (2) cannot exceed the resource limit established under 42 U.S.C. §

1382(a)(3)(B). Following January 1, 1989, a disabled claimant may receive SSI payments if his

or her resources do not exceed $2,000. 42 U.S.C. § 1382(a)(3)(B). Aside from categorical

exclusions from what constitute resources, the statute does not define the term "resources." The

Secretary of the Social Security Administration, however, has promulgated regulations defining

"resources." In pertinent part, "resources" are defined as (1) "cash or other liquid assets or any

real or personal property [(2)] that an individual (or spouse, if any) owns [(3)] and could convert

to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). Moreover,

"[i]f an individual has the right, authority or power to liquidate the property or his or her share of

the property," it is considered a resource. *Id.* § 416.1201(a)(1). "If a property right cannot be

liquidated, the property will not be considered a resource of the individual (or spouse)." *Id.*

Additionally, "by referring to property that an individual 'owns' or 'has a right, authority or

power' to liquidate[, 20 C.F.R. § 416.1201(a)] plainly refers to the individual's rights under state

law." *Navarro v. Sullivan*, 751 F. Supp. 349, 350 (E.D.N.Y. 1990). Courts have often held with

"little hesitation" that the qualifier "and could convert to cash to be used for his or her support

---

[11] Mr. Townsend raised on appeal the issue that the "right, authority or power to liquidate" under 20 C.F.R. § 416.1201(a)(1) does not mean the Property is a resource even though 20 C.F.R. § 416.1201(a)(1) by its terms says so. ECF No. 15, attach. 1 at 5-6 ("The ALJ relies heavily on the first illustration of the definition of resource in the regulations—'If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource.' . . . However, this illustration cannot . . . remove the beneficial ownership requirement."). In fact, he argued that because the Property cannot be converted to cash for his "support and maintenance," the mere "right, or authority or power to liquidate" under 20 C.F.R. § 416.1201(a)(1) is insufficient to establish the Property as a resource. ECF No. 15, attach. 1 at 5-6. Because the undersigned finds that the Property may be converted to cash for his "support and maintenance," this issue is moot.

and maintenance" excludes property for which the claimant did not have the "right to use for [the claimant's] own benefit." *Cannuni v. Schweiker*, 740 F.2d 260, 264 (3d Cir. 1984); *Robinson v. Bowen*, 828 F.2d 71, 73 (2d Cir. 1987). This reading not only results from the text of 20 C.F.R. § 416.1201(a),[12] but is also inferred from the rationale[13] of SSI.

Whether an individual can convert property to cash for his support or maintenance may depend on the individual's role in relation to the alleged resource. For example, "[i]n the case of a revocable trust established by an individual, the corpus of the trust shall be considered a resource available to the individual." 42 U.S.C. § 1382b(e)(3)(A). However,

> [i]n the case of an irrevocable trust established by an individual, if there are *any circumstances under which payment from the trust could be made to or for the benefit of the individual* (or of the individual's spouse), the portion of the corpus from which payment to or for the benefit of the individual (or of the individual's spouse) could be made shall be considered a resource available to the individual.

*Id.* § 1382b(e)(3)(B) (emphasis added).

Here, Mr. Townsend had the right to the proceeds of sale of the Property and therefore the Property could be converted to cash to be "used for his or her support and maintenance" under 20 C.F.R. § 416.1201(a). Mr. Townsend was a statutory trustee under Virginia Code § 13.1-752(C) and considering that a statutory trustee sets up an irrevocable trust (thus allowing the Property the benefit of the more stringent requirements for qualifying as a resource), this case falls within the exemption wherein there is a "circumstance under which payment from the trust could be made" for Mr. Townsend's benefit. 42 U.S.C. § 1382b(e)(3)(B). Specifically, because

---

[12] *See* 20 C.F.R. § 416.1201(a) ("[R]esources means cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns and could convert to cash *to be used for his or her support and maintenance*.") (emphasis added).

[13] *See* 20 C.F.R. § 416.110 ("The basic purpose underlying the supplemental security income program is to assure a minimum level of income for people who are age 65 or over, or who are blind or disabled and who do not have sufficient income and resources to maintain a standard of living at the established Federal minimum income level."); *see also Cannuni*, 740 F.2d at 264 ("[I]t is because of the inability to pay for his own subsistence that the statute grants SSI to eligible claimants. It follows logically that in using the term 'resources,' the statute refers to property that claimants can apply towards their support.").

he is a shareholder, in fact the *sole* shareholder and investor, and Virginia Code § 13.1-752(C) explicitly contemplates that the money left over after distribution to the corporation's obligations would be distributed to the shareholders, the Property could be converted to cash to be used for his "support and maintenance" under 20 C.F.R. § 416.1201(a); Va. Code § 13.1-752(C).  It matters not what the amount is that would be left over after payment of the corporation's debts. Even if Mr. Townsend had the creditors or shareholders as he alleged, and only a small portion remained after payment of the debts, this finding would still stand because the categorization of a "resource" does not turn on the amount of the resource.  Accordingly, the undersigned finds that the ALJ's determination that the Property was a resource is supported by substantial evidence.

### B. The ALJ's Failure to Find a Resulting Trust is Supported by Substantial Evidence.

On appeal, Mr. Townsend argued that the alleged contributors formed a resulting trust, and therefore he either: (1) did not have the ability to convert to cash to use for his support and maintenance; or, in the alternative, (2) had a legal obligation to repay the alleged contributors and which reduced his resource level within the $2,000 threshold eligibility level. ECF No. 15, attach. 1 at 8-10.  Defendant argued, in contrast, that substantial evidence supports the ALJ's decision not to find a resulting trust because the evidence was not clear and convincing.  ECF No. 17, attach. 1 at 10-11.  The undersigned finds that the ALJ's decision not to find a resulting trust is supported by substantial evidence.  Specifically, the evidence does not show that money was advanced prior to the purchase of the land, or demonstrate the proportion of the contributors' money that was allocated to the purchase of the Property, the building, and upkeep of the Property and building.  Thus, the evidence of the alleged resulting trust was not clear and convincing.

13

Under Virginia state law, a resulting trust must be established by clear and convincing evidence. *Gifford v. Dennis*, 335 S.E.2d 371, 373 (Va. 1985). "The party seeking to establish or enforce a resulting trust has the burden of proving the facts alleged to give rise to the existence of such a trust." 85 Am. Jur. Proof of Facts 3d 221 § 19 (2005). A resulting trust is an implied trust that "arises from the intention of the parties, or the nature of the transaction." *Tiller v. Owen*, 413 S.E.2d 51, 53 (Va. 1992). A resulting trust generally arises "when one person pays for property, or assumes payment of the purchase price money or a part thereof, but has the legal title conveyed to another with no express mention of a trust on the face of the conveyance." *Salyer v. Salyer*, 219 S.E.2d 889, 893 (Va. 1975). Moreover, a *pro tanto* trust, or a resulting trust that is created with a proportional contribution among multiple contributors, must be established with definiteness and specificity to the proportional amount contributed and the subject matter. Restatement (Third) of Trusts § 40 (Am. Law Inst. 2003). In addition, "[i]t is necessary that the beneficiary prior to or at the time of the purchase should pay or assume an obligation to pay the purchase price. It is not enough that subsequent to the purchase he pays or agrees to pay the purchase price." *Salyer*, 219 S.E.2d at 893 (internal quotations omitted); *see also Morris v. Morris*, 449 S.E.2d 816, 818 (Va. 1994) ("[T]he trust must arise from the original transaction, and at the time it takes place, and at no other time.") (citing *Miller v. Miller*, 37 S.E. 792, 794 (Va. 1901)).

"[A] party seeking to establish [a resulting trust] must do so by clear and convincing evidence." *Gifford*, 335 S.E.2d at 373. The degree of proof required by the clear and convincing standard is "intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Walker Agency, Inc. v. Lucas*, 211 S.E.2d 88, 92 (Va. 1975) (quoting *Cross v. Ledford*, 120 N.E.2d 118, 123 (Ohio

14

1954)).

Here, the ALJ's finding that the evidence of a resulting trust was not clear and convincing is supported by substantial evidence. Mr. Townsend failed to meet his burden of establishing that the alleged contributors provided the money and the proportions of those contributions. Even if the contributor letters were sufficient to establish that they did, in fact, contribute the total respective money to which they claimed, the letters failed to denote what proportion of the contributors' money was allocated to the purchase of the Property, the building, and the upkeep of the Property. *See Olcott v. Bynum*, 84 U.S. 44, 59 (1872) (finding that when interpreting North Carolina law, there "must be no uncertainty as to the proportion of the property to which the trust extends"). In addition, the letters from each contributor indicated that they had "contributed their respective amount *over five years* to the purchase of the property sold." R. 219-228. Under these circumstances, Mr. Townsend did not meet his burden in proving that "the trust [] ar[o]se from the *original* transaction, . . . and at *no other* time." *Morris*, 37 S.E.2d at 794 (emphasis added); *see also Wu v. Tseng*, 459 F. Supp.2d 468, 480 (E.D. Va. 2006) (finding no resulting trust "because the alleged transfer of land and money as between would-be trustee and beneficiary, did not occur until fourteen (14) years after the Property had been purchased by Mr. Tseng"). Indeed, there is conflicting evidence as to whether any alleged agreement to contribute to the purchase of the property was made before, at, or after the purchase of the property. Ms. Sheppard, for example, stated that Mr. Townsend's friends and families "all agreed to chip in some money to the purchase of the building." [14] R. 579. However, this presumably conflicts

---

[14] Additionally, there is some evidence that a gift may have been intended. In particular, Ms. Sheppard's testimony that the alleged contributors "all agreed to *chip in* some money," R. 579 (emphasis added), or the insistence that they "contributed" to the purchase of the Property and upkeep. These terms are odd terms to use if the intent between the parties was to establish a trust, particularly in light of the fact that "chipping in" and "contributing" generally denote the giving of a gift. Moreover, because some of the alleged contributors are family members, the Court finds it

with her May 19, 2009 letter in which she stated her entire contribution, $10,000, "over a period

of five years [went] towards the *purchase and upkeep of the property*," not the building.  R. 223

(emphasis added).     Accordingly,   there   was   substantial   evidence   to   support   the ALJ's

determination that no resulting trust was created because the evidence did not establish at what

point the alleged contributors provided money and it does not establish the allocations of those

monies. [15]

### C. The ALJ's Failure to Find Any Obligations to either Creditors or Other Shareholders under Virginia Code § 13.1-752(C) is Supported by Substantial Evidence.

Mr. Townsend argued that there was an oral contract for a loan between the alleged

contributors and himself, and as a statutory trustee, he had the duty to repay either additional

shareholders or alleged preexisting creditors.[16]  ECF No. 15, attach. 1 at 7-11.  Mr. Townsend

therefore argued that the shareholders or preexisting creditors reduced his resources below the

---

necessary to note that some familial relationships receive a presumption of a gift when money transfers hands from one family member to another.  *See In re Smith*, 348 F. Supp. 1290, 1294 (E.D. Va. 1972) (mother-daughter relationship implies a gift but strength of presumption dependent on "relative age, health, financial status, etc., of the mother and daughter").  However, there is no presumption under Virginia law for adult siblings, and moreover, the evidence likely does not rise to "clear and convincing evidence" necessary to establish a gift. *See Zink v. Stafford*, 509 S.E.2d 833, 834 (Va. 1999) (citing *Rust v. Phillips*, 159 S.E.2d 628, 631 (Va. 1968) ("[T]he burden of proof rests upon the donee to show every fact and circumstance necessary to constitute a valid gift by clear and convincing evidence.")).  Again, a reasonable ALJ could also find that in light of these inconsistencies in the record, *see* Section V(I)(B), that the intention to form a resulting trust was not sufficiently clear.

[15] In Mr. Townsend's Memorandum in Support of Motion for Summary Judgment, he noted the existence of a loan. *See* ECF No. No. 15, attach. 1 at 10. ("There is no indication in the record that the *loans* from Mr. Townsend's friends and relatives were gifts.") (emphasis added).  In addition, Mr. Townsend's attorney who executed the sale of the Property and distributed the funds from the escrow account, consulted with "a couple of [Mr. Townsend's] brothers" at the time Mr. Townsend bought the Property and "believe[d] that the family *lent* him money to get started."  R. 199 (emphasis added).   "If there is evidence, either direct or circumstantial that a gift or loan was intended, the burden of proof is on the payor to establish the fact that no gift or loan was intended." *Kellow*, 83 S.E.2d at 395.  Although the burden is on the alleged contributors and not Mr. Townsend to prove that a loan was not intended, as opposed to a gift, a reasonable ALJ could also find that in light of the aforementioned inconsistencies, *see* Section V(I)(B), that the intention to form a resulting trust was not sufficiently clear.

[16] Mr. Townsend correctly argued that Virginia Code § 11-2, the Virginia Statute of Frauds, did not preclude the existence of any loan or debt on these facts.  Although otherwise applicable, only a party to a contract can raise a Statute of Frauds defense.  *Charlotte Union Bus Station v. Comm'r*, 209 F.2d 586, 587 (4th Cir. 1954).  Here, the Defendant was not a party to the alleged contract and thus may not raise it. *See Virginian Ry. Co. v. Jeffries' Adm'r*, 66 S.E. 731, 735 (Va. 1909) (finding that a railroad company that had tortuously harmed a landowner's land could not succeed in alleging a Statute of Frauds defense against the undocumented deed of sale of the injured property owner because the railroad company was not a party to the original contract).

$2,000 threshold of SSI eligibility. *Id.* In response, the Defendant argued that Mr. Townsend had not met his burden of proving the alleged contributors were either shareholders or preexisting creditors because the notarized Consent and Declaration recognized Mr. Townsend as the sole shareholder and investor, and the evidence was not sufficiently clear to establish an oral contract. ECF No. 17, attach. 1 at 9, 11. The undersigned finds that the ALJ's failure to find an oral contract is supported by substantial evidence.

"The essential elements of a valid contract must exist to support a binding compromise settlement; there must be a complete agreement which requires acceptance of an offer, as well as valuable consideration." *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980) (citation omitted). "To be valid and enforceable, the terms of an oral agreement must be reasonably certain, definite, and complete to enable the parties and the courts to give the agreement exact meaning." *Richardson v. Richardson*, 392 S.E.2d 688, 690 (Va. Ct. App. 1990), *overruled on other grounds by Flanary v. Milton*, 556 S.E.2d 767, 769 (Va. 2002). "The proponent of [an] oral contract has the burden of proving all elements of the contract." *Id.* at 690. An offer is made where it is "clear, definite, and explicit and leaves nothing open for negotiation." *Chang v. First Colonial Sav. Bank*, 410 S.E.2d 928, 930 (Va. 1991) (citing *Lefkowitz v. Great Minneapolis Surplus Store, Inc.*, 86 N.W.2d 689, 691 (Minn. 1957)).

Substantial evidence supports the ALJ's finding of no preexisting creditors of the corporation. There is no evidence in the record of a "clear, definite, explicit" offer that "leaves nothing open for negotiation" for the Property. Although well after the fact there are statements that refer to the existence of a loan, Mr. Townsend presented no evidence, oral or written, of a clear offer. For example, in *Sykes v. Brady-Bushey Ford, Inc.*, the term "losses would be covered" was insufficiently clear to establish an oral agreement for an insurance contract. *Sykes*

*v. Brady-Bushey Ford, Inc.*, 69 Va. Cir. 219, 227 (2005).   Here, in contrast, the ALJ was presented with no terms of an alleged oral contract; moreover, even more compelling, the contributions spanned *over five years*, and no definite terms as to when the contributions were made and to what they were allocated for was provided.   Furthermore, the evidence of an acceptance by the corporation is even more scant.   For example, there is no testimony from any representatives of the corporation that the funds were actually received.   Moreover, Mr. Townsend failed to bring forth any contemporaneous letters, notes, faxes, financial records, or account statements showing that the individuals in fact contributed to the corporation besides the contributor letters submitted many years after the alleged events transpired.

Additionally, substantial evidence supports the ALJ's finding that Mr. Townsend was the sole shareholder and investor of the corporation.   The ALJ was presented with conflicting evidence.   On the one hand, there were documents stating that the alleged contributors, not Mr. Townsend, decided to sell the Property. R. 580.   Additionally, the alleged contributors claimed that Mr. Townsend either "acted solely as trustee of the property in question," R. 219-22; 224-27, or as "trustee of the property," R. 223.   Notably, however, this evidence dated nearly eight years after the sale and the end of the time period in question.   Conversely, the Consent and Declaration declared that Mr. Townsend was the "only stockholder of record and the only shareholder having any interest" in the corporation that owned the Property. R. 217-18.   Indeed, it clearly labels Mr. Townsend as the "sole investor." *Id.*   This Court will not make credibility determinations and re-evaluate conflicting evidence presented to the ALJ. *Barnhart*, 434 F.3d at 653 (citing *Chater*, 76 F.3d at 589).   Importantly, the ALJ was confronted with a legal document, signed under oath and notarized, representing that Mr. Townsend was, *inter alia,* the sole investor in C & T Restaurant, the owner of the Property, and with subsequent letters and

18

testimony that Mr. Townsend did not invest at all in the Property. Both statements could not be true. Thus, the ALJ's decision to credit the Consent and Declaration was not unreasonable. *See Phelps v. Seely*, 63 Va. 573, 591 (1872) ("My opinion is, that such testimony, long after the execution of the deed, is not sufficient to alter and overthrow its plain terms, supported as it is by the statements on oath."). Mr. Townsend had a significant burden to overcome the express terms of the written notarized document that he, in fact, signed at a time closer to the period in question than the contributor letters. The ALJ made a reasonable credibility determination based on this conflicting evidence. The undersigned finds that the ALJ's determination was supported by substantial evidence because a reasonable mind could weigh more heavily the formal notarized deed, which occurred two years closer to the time period in question, more credible than the contributor letters.

In sum, the decision by the ALJ is supported by substantial evidence in the record. The Property was properly categorized as a resource and neither a resulting trust nor an oral contract was created. Therefore, the undersigned recommends that the Court affirm the decision of the Commissioner.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Mr. Townsend's Motion for Summary Judgment, ECF No. 14, be **DENIED**; the Defendant's Motion for Summary Judgment, ECF No. 16, be **GRANTED**; and the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific

written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2.  A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard<br>
United States Magistrate Judge

Norfolk, Virginia
June 30, 2015

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Robert W. Gillikin, II, Esquire
Rutter Mills, LLP
160 W. Brambleton Avenue
Norfolk, Virginia 23510
*Counsel for the Plaintiff*

Daniel P. Shean
United States Attorney's Office
World Trade Center
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
*Counsel for the Defendant*

/s/
_____
Fernando Galindo
Clerk of the Court

By:
    Deputy Clerk
    June ___, 2015

21